IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOE D. CHAVEZ JR.,

        Petitioner,

   v.                            CIV No. 19-496 MV/JFR

STATE OF NEW MEXICO,

        Respondent.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** comes before the Court on Petitioner Joe David Chavez Jr.'s *Amended Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus By a Person In State Custody*. Doc. 7.  Respondents filed an Answer, after which Petitioner filed a Motion to Amend.[2]  Docs. 19, 21.  Petitioner did not file a reply.  Having carefully reviewed the record,[3] the parties' submissions and the relevant law, and for the reasons set forth herein, the Court finds that the Petition is not well-taken.  The Court therefore recommends that the Petition be **DENIED WITH PREJUDICE** and recommends against issuing a Certificate of Appealability (COA).

---

[1] The presiding judge referred this matter to the undersigned by Order of Reference "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case."  *See* Doc. 14.

[2] Petitioner filed a "Motion to Amend Habeas Corpus Petition".  Doc. 21.  In that submission, Petitioner requests leave to present "one more question" to the Court, but then proceeds to set forth only four of the five issues submitted in the Amended Petition.  In Document 21, Petitioner omits Ground Five of Document 7, which concerned arrest and search warrant affidavits.  Petitioner subsequently clarifies that the "one more question" he wishes the Court to consider, is "whether any, or all of the issues 1-4, raised in the Petition for Writ of Habeas Corpus deny due process of law?"  Doc. 23.  Respondents object and state that all issues contained in Petitioner's Motion to Amend were contained in his original Petition, so there is in fact no "new" issue to add.  Doc. 22.  The Court will view Petitioner's submissions liberally and consider all five issues within a Constitutional Due Process framework.

[3] The record in the action consists of the Amended Petition (Doc. 7) and supporting documents.  Respondents have submitted their Response (Doc. 19) with supporting documents (Docs. 19-1, pages 1-632).  The Court notes that the Response's supporting documents are identified as individual Exhibits (i.e. Exhibits A-HH).  *See* Doc. 19-1.  The Court will cite to an attachment by its specific page number(s) as reflected in the ECF filing (e.g. Doc. 19-1 at 10 ("Statement of Joinder").

## <u>INTRODUCTION</u>

Petitioner and others were prosecuted in the Twelfth Judicial District Court, State of New Mexico, for engaging in racketeering and other crimes linked to their drug trafficking activities. The indictment alleged that Petitioner and others[4] formed a criminal enterprise that would purchase controlled substances, primarily methamphetamine, in Arizona and then transport and sell those drugs in the Alamogordo, New Mexico area.[5]  Petitioner's brother Robert Chavez was the leader of the organization, known as the AZ Boys, while Petitioner acted as Robert's intermediary and instructed other members to do what Robert directed.  During the lengthy investigation, law enforcement noticed numerous cars outside Robert Chavez's residence, and that all of the cars had been purchased from the Richardson Motor Company, a local car dealership.  They also learned that none of the cars had liens associated with them and all were paid for in cash.  A confidential informant was able to provide detailed information about the workings of the organization to law enforcement, specifically about drug purchases in Arizona and subsequent purchases of automobiles in Alamogordo.  Financial documents seized during the investigation helped prove that Petitioner and his brother used illegal proceeds to purchase numerous automobiles and pay the mortgage on his residence.  *See generally* Doc. 19-1 at 251-254 (October 30, 2018 "Memorandum Opinion" from the New Mexico Court of Appeals).

---

[4] Petitioner's case was joined with those of six other co-defendants, which included his brother Robert Chavez.  *See* Doc. 19-1 at 10 ("Statement of Joinder").

[5] Petitioner was charged by the Otero County Grand Jury with Count 1: Racketeering; Count 2: Conspiracy to Commit Racketeering; Count 3: Trafficking a Controlled Substance; Count 4: Conspiracy to Commit Trafficking a Controlled Substance; Count 5: Distribution of Marijuana; Counts 6-10, 12-13, 15, 17: Money Laundering (Over $10,000); Count 11: Conspiracy to Commit Money Laundering (Over $100,000); Count 14: Conspiracy to Commit Money Laundering (Over $50,000);  Counts 16, 18: Conspiracy to Commit Money Laundering (Over $10,000).  *See* Doc. 19-1 (Grand Jury Indictment) at 1-9.

Petitioner's case proceeded to trial in April, 2014, and after four days of trial proceedings, the jury convicted Petitioner of all counts except Count 3 (trafficking—methamphetamine) and Count 5 (trafficking—marijuana). Doc. 19-1 at 130-48 ("Original Verdicts"). Petitioner was sentenced in the Twelfth Judicial District Court, Otero County, State of New Mexico, to a total period of incarceration of forty-eight (48) years of imprisonment. *Id.* at 164-69. Petitioner appealed his convictions to the New Mexico County of Appeals, which affirmed. *Id.* at 251 et seq. The New Mexico Supreme Court denied a petition for writ of certiorari. *Id.* at 288-89. Thereafter, Petitioner filed in the State district court a petition for habeas corpus, which was summarily dismissed by the district judge. *Id.* at 429-34. The New Mexico Supreme Court denied a subsequent petition for writ of certiorari. *Id.* at 611. Petitioner then timely filed the instant federal Petition.

## **PROCEDURAL HISTORY**

In the instant proceeding, Petitioner raises five claims. In **Ground One**, Petitioner alleges that his right to not be placed in double jeopardy was violated when the federal government obtained a default judgment in federal forfeiture proceedings, prior to and apart from Petitioner's criminal prosecution and conviction in state court. In **Ground Two**, Petitioner argues there was insufficient evidence to support the racketeering conviction, because the jury acquitted on the drug trafficking charges which were the only charges that could support a racketeering conviction. In **Ground Three**, Petitioner argues that the state trial judge erroneously instructed the jury, as the racketeering instruction failed to provide the essential elements of the underlying offenses beyond the two possible predicate offenses with which Petitioner was charged: trafficking and conspiracy to commit trafficking. In **Ground Four**, Petitioner claims both trial and appellate counsel were ineffective. Finally, in **Ground Five**,

Petitioner generally alleges that the arrest warrant and search warrants were based on defective and legally insufficient affidavits.  The Court addresses each claim below.

## ANALYSIS

After reviewing the motion and response, as well as the underlying files and records of the case, I can hold an evidentiary hearing.  28 U.S.C. § 2254; *Townshend v. Sam*, 372 U.S. 293, 312 (1963).  To warrant such a hearing, the Petitioner must show that the hearing held in state court was not fair or adequate.  Rules Governing Section 2254 Cases, Rule 8 Adv. Comm. Notes; § 2254(d).  When reviewing the record in this case, including Petitioner's Motion and United States' response as well as all the documents in the underlying criminal case, I am mindful that I must liberally construe a pro se litigant's pleadings and hold them to a less stringent standard than pleadings drafted by an attorney.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).  I have done so here and have determined that no such evidentiary hearing is warranted, as the petition, files and records in this matter conclusively show that Petitioner received a fair and adequate hearing.  I am comfortable ruling without taking additional testimony or evidence.

**GROUND ONE:    Whether Petitioner Suffered A Violation Of His Fifth Amendment Right To Not Be Placed In Double Jeopardy**

Petitioner states that Ground One has not been exhausted.  Doc. 7 at 8.  The claim was asserted in the state habeas case and summarily dismissed.  *See* Doc. 19-1 at 291 (listing "double jeopardy" as a claim); 391-393; 429-434  (Procedural Order on Petition for Writ of Habeas Corpus (Summary Dismissal)); 438-445 (Motion to Dismiss based on Violation of Double Jeopardy).  The undersigned finds Petitioner has adequately exhausted Ground One.

Petitioner states that his right to not be placed in double jeopardy was violated when, after the initiation of criminal and forfeiture proceedings in the Twelfth Judicial District Court, the state prosecutor dismissed the forfeiture proceedings and transferred all seized property to the federal government for federal forfeiture proceedings.  Doc. 7 at 10; *see* Doc. 19-1 at 11-15 ("Complaint of Forfeiture of Monies and Personal Property"), and 19-1 at 19-24 ("Complaint of Forfeiture of Real Property").  The United States filed a "Verified Complaint for Forfeiture in Rem" on February 15, 2013, in which the federal government alleged that the personal and real property and named monies constituted proceeds of illegal drug trafficking, or were subject to forfeiture because they were used to facilitate the transportation, sale, receipt, or possession of a controlled substance.  *See* Civ. No. 13-cv-155 (D.N.M.), Doc. 1.  Petitioner Joe Chavez filed an answer to the forfeiture complaint as an interested party, and claimed to be the "rightful and lawful owner" of the properties subject to forfeiture.  Civ. No. 13-cv-155 (D.N.M.), Doc. 57.  On December 5, 2013, the federal government obtained final judgment and order of forfeiture with respect to the property.  Civ. No. 13-cv-155 (D.N.M.), Doc. 127 ("Final Judgment and Order of Forfeiture Except as to One Vehicle").[6]

Now, Petitioner relies on *State v. Nunez*, 129 NM 63, 2 P.3d 264, 2000-NMSC-013, to claim that the subsequent criminal conviction violated his right to not be placed in double jeopardy in that the criminal charges and forfeiture proceedings did not proceed in a single bifurcated proceeding.  *See* Doc. 7 at 58-66 ("Motion to Dismiss").  Petitioner states that jeopardy attached when the federal government obtained its default judgment in the civil forfeiture proceeding, and therefore the subsequent criminal convictions in state court were in

---

[6] Apart from the Final Judgment, a settlement between claimant Angela Catt and the United States was reached with respect to one vehicle.  *See* Civ. No. 13-cv-155 (D.N.M.), Doc. 77.

violation of Petitioner's rights under Article II, Section 15 of the New Mexico Constitution and the New Mexico Forfeiture Act.  *Id*. at 439.  Petitioner claims that New Mexico's Forfeiture Act, which prohibits (under certain circumstances) the transferal of the seized property to the federal government for forfeiture proceedings, is retroactive to his case.  *Id*.

The Forfeiture Act prohibits in some instances the transfer of seized property to the federal government for purposes of instituting federal forfeiture proceedings.  Section 31-27-11 reads in relevant part:

> A. A law enforcement agency shall not directly or indirectly transfer seized property to a federal law enforcement authority or other federal agency unless:
>   (1) the value of the seized property exceeds fifty thousand dollars ($50,000), excluding the potential value of the sale of contraband; and
>   (2) the law enforcement agency determines that the criminal conduct that gave rise to the seizure is interstate in nature and sufficiently complex to justify the transfer of the property; or
>   (3) the seized property may only be forfeited under federal law.
>
> B. The law enforcement agency shall not transfer property to the federal government if the transfer would circumvent the protections of the Forfeiture Act that would otherwise be available to a putative interest holder in the property.

N.M.S.A. 1978, § 31-27-11 (2015).

This section went into effect on July 1, 2015, or *after* Petitioner's trial and convictions. Thus, whether section 31-27-11 even applies to Petitioner's case is dubious, as Petitioner provides no authority to suggest that the New Mexico legislature, or a New Mexico court, has ever applied this statute retroactively.  Moreover, the value of the seized monies, personal property and real property in Petitioner's case certainly exceeds $50,000[7] and the proven

---

[7] The Complaint of Forfeiture of Real Property seeks forfeiture of Petitioner's property at 2815 Birdie Loop, Alamogordo, New Mexico, upon which mortgage payments were made by using monies derived from criminal conduct in violation of the Racketeering Act.  *See* Doc. 19-1 at 19-24.  In the Complaint of Forfeiture, the State of New Mexico listed the seized, subject property as: $32,455.05 in cash; a 2010 Chevrolet Camaro (purchase price: $31,089.45); a 2012 Dodge Challenger (purchase price: $49,181.40); a 2011 Dodge Charger (purchase price: $30,600), a 2010 GMC Sierra (purchase price: $33,664.45).  *See* Doc. 19-1 at 11-15; 16-17 (Affidavit of Seizure).

criminal conduct of racketeering and money laundering affected interstate commerce, so even if Petitioner somehow could establish that the statute applied retroactively, Petitioner fails to show how it would have prevented transfer.

The Forfeiture Act that was in effect in 2012, when the criminal and forfeiture proceedings commenced against Petitioner, did not include § 31-27-11, and thus lacked a restriction on the transfer of seized assets to the federal authorities.[8] *See* N.M.S.A. 1978, §§ 31-27-1 to 8 (2012). And while the *Nunez* decision was, in 2012, over a decade old, it simply required criminal and civil forfeiture proceedings to be brought in a single, bifurcated proceeding. *Nunez*, 129 N.M. at 89, 2 P.3d at 290. Had the State of New Mexico instituted in state court a separate forfeiture proceeding against the property seized from Petitioner, apart from his criminal trial, then Petitioner could possibly claim a violation of his double jeopardy rights as guaranteed by the Article II, Section 15 of the New Mexico Constitution. But that is not what occurred here. During Petitioner's criminal case, the State transferred the subject property to the federal authorities, which then instituted a *federal* forfeiture proceeding against the property in the United States District Court. The New Mexico Forfeiture Act did not prohibit or otherwise limit such transfers during Petitioner's trial, and because the forfeiture proceeding occurred in federal court, jeopardy did not attach and *Nunez* was not implicated. Petitioner fails to show how the transfer of the seized property by the state to federal entities for subsequent

---

[8] The Court has reviewed the Forfeiture Act in effect at the time of Petitioner's trial in 2013. *See* NMSA §§ 31-27-1 to -8 (2002). The Court notes that the 2002 version of the Act did not restrict the transfer of seized assets to federal authorities. After Petitioner's trial and convictions, the New Mexico Legislature passed section 31-27-11, which placed limits on when seized property may be transferred to a federal law enforcement authority. *See* NMSA § 31-27-11 (2015).

federal forfeiture proceedings ran afoul of his rights under either the *Nunez* decision or the New Mexico Forfeiture Act.

Additionally, whether the underlying state proceedings somehow misapplied state law or perhaps were in violation of Petitioner's state constitutional rights is inapposite to the instant proceedings, as Petitioner is entitled to relief here only if he can show a violation of his *federal* rights. Indeed, for purposes of the instant § 2254 proceeding, Petitioner is only entitled to relief if he demonstrates that the state court's adjudication of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Welch v. Workman*, 639 F.3d 980, 991-92 (10th Cir. 2011) (after confirming the existence of clearly established federal law, the court can only grant relief if the state court decision is "diametrically different" and "mutually opposed" to that established law).

Here, it is clearly established that civil in rem forfeiture proceedings are not "punishment" for purposes of the double jeopardy clause of the Fifth Amendment to the United States Constitution. *United States v. Ursery*, 518 U.S. 267, 287-92 (1996) (holding that in rem civil forfeitures brought pursuant to 21 U.S.C. § 881(a) are neither "punishment" nor criminal for purposes of the Double Jeopardy Clause). Thus, even if Petitioner could somehow show that the state's *transfer* of his property to the federal authorities violated state law, such violation does not afford him relief in federal court. The fact that Petitioner can demonstrate no violation of federal law is fatal to his claim.

The record shows that the state courts addressed and rejected Petitioner's double jeopardy claim. The State district judge found that "petitioner has failed to allege facts sufficient to show that the petitioner has a valid claim for ineffective assistance of counsel arising from trial and appellate counsel's failure to prosecute a defense based on double jeopardy…" Doc. 19-1 at 429-30. Petitioner exhausted his claim in the state habeas case, and the State district judge summarily rejected it, albeit on ineffective assistance grounds. The New Mexico Supreme Court subsequently denied certiorari, thereby upholding the State district judge's summary dismissal. Doc. 19-1 at 611; *cf Wilson v. Sellers*, 138 S.Ct. 1188 (2018) (discussing when federal habeas court should "look through" the unexplained decision to the last related state court decision that does provide a relevant rationale). Accordingly, I recommend the District Judge deny this claim.

**GROUND TWO:    Whether Sufficient Evidence Supports Petitioner's Convictions For Racketeering, Money Laundering, And Associated Conspiracies.**

Petitioner next contends that the jury's verdicts of acquittal on Counts 3 and 5 (the drug trafficking charges), means that there is no pattern of racketeering given that the two required predicate acts were rejected. Doc. 7 at 12. Petitioner attaches the Summary Dismissal issued in his state habeas proceeding, *id.* at 13-18, but fails to provide any additional substantive argument. Petitioner contends that the issue was not addressed by the New Mexico Court of Appeals. *Id.* at 12. Respondent answers and notes that the issue was addressed by the New Mexico Court of Appeals in the direct appeal and by the State district judge in habeas. Doc. 19 at 11-12. Because the claim was asserted in the New Mexico Court of Appeals, Doc. 19-1 at 268-72, and in State district court in habeas, *id.* at 385-90, the matter was exhausted for this Court's review.

Evidence is sufficient to support a conviction so long as "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[W]hile the evidence supporting the conviction must be 'substantial' and 'do more than raise a mere suspicion of guilt,' it 'need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt.'" *United States v. Johnson*, 42 F.3d 1312, 1319 (10th Cir. 1994) (citing *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987) and *United States v. Alonso*, 790 F.2d 1489, 1493 (10th Cir. 1986)). A court will not "overturn a jury's finding unless no reasonable juror could have reached the disputed verdict." *United States v. Carter*, 130 F.3d 1432, 1439 (10th Cir. 1997). Nor will a federal court overturn a state court decision regarding sufficiency of the evidence unless the state court's decision was "objectively unreasonable". *Cavazos v. Smith*, 565 U.S. 1, 4 (2011) (citation omitted). Rather, a court must "affirm the judgment of conviction if there is record evidence which would allow a rational trier of fact to find the defendant guilty of the crime charged in the indictment beyond a reasonable doubt." *United States v. Young*, 862 F.2d 815, 818 (10th Cir. 1988). Finally, the state court decision will meet the AEDPA standard 'unless the analysis [is] so flawed as to undermine confidence that the constitutional claim has been fairly adjudicated." *Mora v. Williams*, 111 Fed.Appx 537, 541 (10th Cir. 2004) (Unpubl.) (citing *Cruz v. Miller*, 255 F.3d 77, 87 (10th Cir. 2001)).

The New Mexico Court of Appeals reviewed the elements of racketeering. *See* Doc. 19-1 at 269-272 (reviewing NMSA 1978, §§ 30-42-1 to -6 (1980, as amended through 2015)). The appellate court concluded that the evidence at trial demonstrated that "the common purpose of the AZ Boys was to profit from ongoing illegal activity" and its members "were involved in the operation and shared the common purpose to profit from drug trafficking and money laundering." *Id*. at 270. The Court of Appeals found that the AZ Boys were an organization,

with Petitioner's brother Robert as the leader, and Petitioner as Robert's intermediary who would ensure that Robert's orders were carried out. *Id*. The AZ Boys demonstrated a high degree of planning, cooperation and coordination. *Id*. at 271. The appellate court also concluded that the AZ Boys had continuity whose associates acted on a continuing basis and which operated for at least the five years law enforcement observed them. *Id*. Indeed, during that time, the evidence showed that the organization made "at least" sixteen cash vehicle purchases in members' names from 2007-2012, and managed to overcome operational setbacks such as the arrest of a member by finding a suitable replacement. *Id*. In this case, the Court of Appeals found, "there was a consistent pattern of drug trafficking and money laundering. Defendant and other members were jointly involved in the common purpose of profiting from illegal acts." *Id*. at 271-72. The appellate court concluded there was sufficient evidence of an enterprise to convict Petitioner of racketeering. *Id*. at 272. Additionally, the district judge in state habeas proceedings summarily dismissed Petitioner's argument that there was insufficient evidence at trial, finding that the appellate court gave "careful consideration" in its opinion to the contrary. *Id.* at 430.

This Court is unable to conclude that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law… or ... was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Notwithstanding the fact that the Court of Appeals did not explicitly address the fact that Petitioner was acquitted of the drug trafficking counts, the appellate court clearly found that the overall conduct of Petitioner and the other members of the AZ Boys was to profit from illegal activity, including a "consistent pattern of drug trafficking and money laundering." Doc. 19-1 at 272. This Court is satisfied that the State court's determination of the facts in light of the evidence presented was reasonable and was not contrary

11

to clearly established Federal law.  As such, I recommend that the District Judge deny this claim

for relief.

**GROUND THREE:  Whether Erroneous Jury Instructions Deprived Petitioner Of A Fair
              Trial**

The third claim raised by Petitioner concerns the jury instructions given for Counts 1 and

2, the racketeering and conspiracy to commit racketeering counts.  Doc. 7 at 19-21.  Regarding

the racketeering instruction, Petitioner argues that the instruction properly referenced all of the

possible predicate offenses, but failed to provide the elements of all of those crimes.  *Id*. at 20.

Thus, the jury was instructed on the elements of trafficking and conspiracy to commit trafficking

but not on any of the other predicate offenses.  *See* Doc. 19-1 at 395.  Petitioner claims this was

error.  Doc. 7 at 20.  Regarding the conspiracy to commit racketeering instruction, the jury was

instructed on conspiracy, with "racketeering" inserted as the named felony that was the object of

the conspiracy; but because "racketeering" is a defined term (meaning any act involving 25

predicate crimes), Petitioner argues that it is not clear that "racketeering" refers to the defined

term itself, or to a separate criminal offense.  "This leads to the possibility that… if the jury

determined that defendant committed one count of conspiracy to commit drug trafficking, the

jury also could have convicted defendant for conspiracy to commit racketeering on this basis

alone."  *Id*. at 21.  Respondent answers that Petitioner has failed to demonstrate that the state

court's resolution of the jury instruction claim was contrary to U.S. Supreme Court precedent.

Doc. 19 at 12.  Respondent argues that Petitioner is unable to meet the requirements of §

2254(d), and that "this is an issue purely of state law that is not cognizable in a federal habeas

case."  *Id*. at 12.

"A § 2254 petitioner has a heavy burden in attempting to set aside a state conviction

based on an erroneous jury instruction."  *Nguyen v. Reynolds,* 131 F.3d 1340, 1357 (10th

Cir.1997). "[T]he fact that the instruction was allegedly incorrect under state law is not a basis

for habeas relief." *Estelle v. McGuire,* 502 U.S. 62, 71-72 (1991). Rather, where a habeas claim

is based on an improper jury instruction, the initial inquiry must be "whether the ailing

instruction by itself so infected the entire trial that the resulting conviction violates due process."

*Id.* at 72 (quotation omitted); *see also Nguyen,* 131 F.3d at 1357 ("As a general rule, errors in

jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings,

unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process

of law." (quotation omitted)). In making this determination, this court must consider the jury

instruction "in the context of the instructions as a whole and the trial record." *Estelle,* 502 U.S.

at 72, 112 S.Ct. 475. Therefore, Petitioner is entitled to habeas relief only if the improper

instructions both (1) "so infected the entire trial that the resulting convictions violate due

process" and (2) "had a substantial and injurious effect or influence in determining the jury's

verdict." *Turrentine v. Mullin,* 390 F.3d 1181, 1191 (10th Cir. 2004) (quotation omitted).

A. The State Courts Have Fully Reviewed and Rejected Petitioner's Claim, and §
   2254(d) Requires Denial

The Court notes that the claim was asserted in the state habeas case and the State district

judge summarily dismissed it.[9] *See* Doc. 19-1 at 394-407; 430. "When a federal claim has been

---

[9] The entirety of the State district judge's denial of Petitioner's habeas petition amounts to the following:

The petitioner has failed to allege facts sufficient to show that the petitioner has a valid claim for
ineffective assistance of counsel arising from trial and appellate counsel's failure to prosecute a defense
based on double jeopardy, on the insufficiency of the evidence, on an illegal or false arrest, on an illegal
search and seizure, on a violation of the right to confront witnesses, **on the court's use of erroneous jury
instructions,** and on the use of poor procedure in the prosecution of an appeal prejudicial to the defendant.
The court further notes that the defendant has previously prosecuted an appeal in the Court of Appeals of
New Mexico, docket number 34,056, in which he asked the appellate court to consider (1) whether the
protective sweep of Robert Chavez's residence was constitutional; (2) whether the district court erred by
allowing the State's late disclosure of an expert witness; (3) whether the district court erred by denying
defense counsel's motion to withdraw; (4) whether defendant received ineffective assistance of counsel;
and (5) whether there was sufficient evidence of an enterprise to convict Defendant of racketeering—in
other words, some of the same claims pursued in the present petition for writ of habeas corpus. The court
notes as well that the claims for ineffective assistance of counsel in the case on appeal dealt with the

presented to a state court and the state court has denied relief, it may be presumed that the state

court adjudicated the claim on the merits in the absence of any indication or state-law procedural

principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99, 131 S. Ct. 770, 784-85

(2011); *see also Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  " 'Adjudicated on the

merits' has a well settled meaning: a decision finally resolving the parties' claims, with res

judicata effect, that is based on the substance of the claim advanced, rather than on a procedural,

or other ground." *Wilson v. Workman*, 577 F.3d 1284, 1308 (10th Cir. 2009) (en banc)

(Tymkovich, J., diss.) (citation omitted), *overruled on other grounds by Lott v. Trammell*, 705

F.3d 1167 (10th Cir. 2013).  This presumption "is a strong one that may be rebutted only in

unusual circumstances..." *Johnson v. Williams*, 568 U.S. 289, 302 (2013).  Even when a state

court "fails either to mention the federal basis for the claim or cite any state or federal law in

support of its conclusion," we presume the court "reache[d] a decision on the merits." *Fairchild

v. Trammell*, 784 F.3d 702, 712 (10th Cir. 2015) (internal quotation marks omitted).

Here, Petitioner fails to meet his heavy burden to show that AEDPA's deferential

standards don't apply.  Petitioner makes no claim, and the Court fails to see one, that suggests

that erroneous jury instructions so "infected" his trial, *Estelle,* 502 U.S. at 72, to the extent that

he suffered a deprivation of his right to due process of law, or that his trial was fundamentally

unfair.  Accordingly, the Court concludes that the erroneous jury instruction claim was

"adjudicated on the merits" in the state courts.  Because Petitioner has failed to overcome §

---

suppression of illegally obtained evidence, failures of communication, failure to prepare evidence to
controvert or weaken the effect of expert evidence offered by the state, and failure to conduct a vigorous
cross examination of witnesses used by the state.  Again, **the claims in this petition have already been
given careful consideration in the Court of Appeals of New Mexico.**

Doc. 19-1 at 429-30 (emphasis added).  The Summary Dismissal contains no other analysis.  The New Mexico
Supreme Court denied Petitioner's petition for writ of certiorari.  Doc. 19-1 at 611.

2254(d)'s strong presumption that the state court adjudicated the erroneous jury instruction claim on the merits, the Court recommends that the District Judge deny Ground Three.

B. <u>In the Alternative, Even if the State Courts Did Not "Adjudicate the Claim on the Merits", Petitioner is Still Not Entitled to Federal Habeas Relief</u>

Nonetheless, because the state district judge's summary dismissal lacks any substantive analysis on this issue, a federal habeas court could conclude that the adjudication was not "on the merits" and therefore is "not constrained by the deference principles of § 2254(d)." *Hanson v. Sherrod*, 797 F.3d 810, 825 (10th Cir. 2015) ("When a state court has not considered a claim on the merits, we are 'not constrained by the deference principles in § 2254(d).' ") (citing *Cargle v. Mullin*, 317 F.3d 1196, 1212 (10th Cir. 2003)); *see also Aycox*, 196 F.3d at 1178 (noting "that the deferential post-AEDPA standard does not apply where the state court did not decide a claim on its merits."). Denial of Petitioner's claim is appropriate, therefore, only if this Court's independent review of the record and pertinent federal law persuades that the underlying state court's decision contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented.

The Court notes that the jury instructions given in Petitioner's trial were substantively identical to those given in the later trial of a co-defendant, and which the New Mexico Court of Appeals subsequently determined to be erroneous. *See State v. Catt*, 2019-NMCA-013, ¶¶ 5-22, 435 P.3d 1255, 1260-63 (N.M.Ct.App. 2018); *also see* Doc. 19-1 at 399-407 (attaching *Catt* opinion to state habeas petition).[10] In *Catt*, the Court of Appeals concluded that the racketeering instruction was deficient because it failed to define the elements of each predicate offense that

___

[10] The Court notes that the racketeering and conspiracy to commit racketeering instruction given in *Catt* included the required element that "[D]efendant was not acting under duress". The Court fails to see how this added element alters the fundamental fairness analysis, especially given that Petitioner does not argue that the difference carries any significance.

must be proved at trial, and that the error required vacatur of the defendant's conviction. 435 P.3d at 1261-62 ("Because the instructions permitted the jury to convict Defendant for racketeering based on predicate offenses for which the jury had no elements, the instructions were erroneous."). Similarly, as to the conspiracy to commit racketeering instruction, the appellate court noted that the instruction referred to "racketeering" alone, but because "racketeering" is a defined term meaning an act involving any of twenty-five predicate offenses, it is unclear from the instruction whether "racketeering" refers to the separate criminal offense or the defined term. *Id*. at 1262. The appellate court concluded that "[b]ecause the conspiracy to commit racketeering instruction permitted the jury to convict Defendant on the mere agreement to commit a single predicate act, Defendant's conviction for the same cannot stand." *Id*. at 1262-63.

As noted above, this Court's independent review of the record here reveals no significant differences between the instructions given at Petitioner's trial, and those given in *Catt*. The question then becomes, is Petitioner entitled to federal habeas relief? To answer this question in the affirmative, the Court must find that the error resulted in a deprivation of Petitioner's federal constitutional right. And to make that showing, Petitioner must demonstrate that the instruction was so fundamentally unfair as to have denied him of due process. *Tiger v. Workman,* 445 F.3d 1265, 1267-68 (10th Cir. 2006); *see also Nguyen,* , 131 F.3d at 1357 (citations omitted) (errors in jury instructions are not reviewable in federal habeas corpus proceedings "unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law."). Additionally, the erroneous jury instruction will be deemed harmless unless the instruction had the effect of denying petitioner a defense. *Taylor v. Workman*, 554 F.3d 879, 886 (10th Cir. 2009); *Baer v. Neal,* 879 F.3d 769, 779 (10th Cir. 2018).

Here, Petitioner's argument is rooted in a state appellate court's interpretation of state law.[11]  As such, the claim is not cognizable under 28 U.S.C. § 2254.  *Engle v. Isaac*, 456 U.S. 107 (1982).  This Court concludes that the state courts' determination is not unreasonable or erroneous given the strong evidence presented of racketeering and money laundering activities and associated conspiracies.  Petitioner's trial lasted four days, and the jury acquitted Petitioner of two charges; there is no suggestion that the state court unreasonably applied clearly established federal law, or unreasonably determined the facts in light of the evidence presented.  The Court fails to see how the jury instructions deprived Petitioner of a fair trial and to due process of law, or the ability to present a defense.  Consequently, I conclude that Petitioner's claim of erroneous jury instructions fails, and recommend that the District Judge deny it.

---

[11] If the correctness of the jury instruction is challenged only under state law, then the claim is not cognizable under 28 U.S.C. § 2254.  Here, Petitioner makes no specific reference to federal precedent, but imports the central holdings from *State v. Catt* to argue against the jury instructions given in his trial.  The Court thus contemplates whether *Catt* relies on federal authority as the basis of its holdings.

The Court of Appeals in *Catt* separately examined the jury instructions for racketeering and conspiracy to commit racketeering.  Regarding the racketeering instruction, the court noted that the instructions set out the elements of racketeering (including the requirement that the defendant "engaged in at least two incidents of racketeering…), and then separately defined racketeering by setting out twenty-five predicate offenses, without setting forth the elements of those predicates.  The court concluded that the instruction was erroneous because "the instructions permitted the jury to convict Defendant for racketeering based on predicate offenses for which the jury had no elements…"  435 P.3d at 1261-62.  Throughout its discussion of the racketeering instructions, the Court of Appeals did not refer to, or rely upon, federal law.

Similarly, regarding the conspiracy to commit racketeering instruction, the Court of Appeals concluded that this instruction was erroneous because it permitted the jury to convict Defendant "on the mere agreement to commit a single predicate act…".  *Id.* at 1263.  In reaching that holding, the appellate court did not reference federal precedent.

The Court of Appeals went on to address the appellant's argument that the state must prove *she* committed two predicate acts, making no distinction between racketeering and conspiracy to commit racketeering, while the State countered that it need only prove that the defendant agreed to commit two predicate racketeering acts *or* agreed to participate in the conduct of the enterprise with the knowledge that other members would commit at least two predicate acts.  In agreeing with the State's position, the Court of Appeals relied on *Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469 (1997).  The appellate court's further discussion of the conspiracy to commit racketeering instruction clarified that the State could proceed on *either* of two separate theories (that defendant agreed to commit two predicate racketeering acts, or that she agreed to participate in the conduct of the enterprise with the knowledge that other members would commit at least two predicate acts).  But that discussion is dicta and is not central to its holding.  435 P.3d at 1264.  Accordingly, this Court concludes that the Court of Appeals' discussion of federal authority did not guide its analysis in arriving at the central holdings in *Catt*.

**GROUND FOUR:    Whether Petitioner Received Ineffective Assistance Of Counsel**

Petitioner disputes that his ineffective assistance of counsel claims were sufficiently raised or considered in the state proceedings. Doc. 7 at 23 ("Petitioner believes Judge Sanchez did not look at these issues, because he said they are the same issues raised in appeal but they are not the same issues"). Nonetheless, Petitioner does not identify which issues were not considered by the state habeas judge. Respondent does not address exhaustion, but argues that there is nothing in the record to show that trial or appellate counsel were deficient. "Simply put, Petitioner is unable to show that any alleged errors by trial counsel affected the trial in any material way. Petitioner has failed to show a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. Nor has Petitioner shown that appellate counsel was deficient in any manner." Doc. 19 at 14.

The Court notes that the New Mexico Court of Appeals on direct appeal, and the state district judge in habeas, rejected Petitioner's claims of ineffective assistance. *See* Doc. 19-1 at 266-68; 430. The Court of Appeals specifically considered counsel's failure to move to suppress the protective sweep; counsel's lack of preparedness, lack of communication, and defective cross-examination; and counsel's failure to engage a forensic accounting expert. *Id.* at 266-67. In state habeas proceedings, the state district judge also considered various ineffective assistance claims, including failure to raise a double jeopardy defense; failure to argue insufficiency of the evidence; failure to raise an illegal or false arrest; failure to argue an illegal search and seizure; failure to confront witnesses; failure to argue erroneous jury instructions; and use of "poor procedures" by appellate counsel. Doc. 19-1 at 430. The state district judge wrote:

> The court notes as well that the claims for ineffective assistance of counsel in the case on appeal dealt with the suppression of illegally obtained evidence, failures of communication, failure to prepare evidence to controvert or to weaken the

18

effect of expert evidence offered by the state, and failure to conduct a vigorous cross examination of witnesses used by the state.  Again, the claims in this petition have already been given careful consideration in the Court of Appeals of New Mexico.

*Id.*  The Court concludes that the issues presently raised by Petitioner regarding the assistance he received from both trial and appellate counsel have previously been raised in the state courts in substantially the same form.  The Court finds, therefore, that Petitioner's IAC claims have been exhausted and can be ruled upon.[12]

Petitioner's IAC claims can be grouped in several categories:

<u>Failure to Investigate</u>: trial counsel failed to investigate various motions, challenge sufficiency of the evidence, and challenge erroneous jury instructions (Doc. 7 at 24).

<u>Failure to File Motions</u>:  trial counsel failed to file motions on double jeopardy, sufficiency of the evidence, and to suppress; counsel failed to challenge jury instructions; counsel failed to file notice of appeal and docketing statement (Doc. 7 at 25).

<u>Failure to Communicate</u>: trial counsel lied to Petitioner's sister regarding the handling of federal forfeiture, he said he would do it but did nothing (Doc. 7 at 24); counsel failed to inform Petitioner that five warrants were missing from discovery (Doc. 7 at 25); counsel generally failed to communicate with Petitioner and his family (Doc. 7 at 25); trial counsel failed to communicate with appellate counsel (Doc. 7 at 25).

---

[12] Petitioner makes a number of vague assertions regarding counsel's performance that, generously, can be viewed as undeveloped claims: proper investigation "would have uncovered more evidentiary and procedural issues" (Doc. 7 at 24); trial counsel "admitted" to providing IAC, on the record in January or February 2014 (Doc. 7 at 25); trial counsel committed crimes and got suspended for stealing, lying, and embezzling money from clients and from the state (Doc. 7 at 26); appellate counsel operated under a conflict by representing Petitioner as well as a co-defendant (Doc. 7 at 27); appellate counsel filed a frivolous appeal, did nothing to help Petitioner, and failed to raise "strong obvious issues" (i.e. double jeopardy; sufficiency of the evidence) (*Id.*).  Petitioner fails to advance how any of these assertions were addressed by the state courts, or how he has suffered a deprivation of his federal constitutional rights.  Because Petitioner has not met his burden as required by 28 U.S.C. § 2254(d), the Court will recommend that the District Judge deny these conclusory, undeveloped claims.

Beyond making these assertions, however, Petitioner fails to offer any argument or analysis as to how counsel's failure to take any of these various actions was deficient, let alone how Petitioner suffered prejudice by counsel's lack of action.

To meet his burden under *Strickland,* Petitioner must present allegations that are "specific and particularized, not general or conclusory." *Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995); *see United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (conclusory allegations are insufficient to support an ineffective assistance of counsel claim). Then, even if Petitioner can meet that burden, he still must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of his trial would have been different. *See Strickland*, 466 U.S. at 694. To be considered *ineffective* assistance of counsel, "the representation must have been such as to make the [proceeding] a mockery, sham, or farce, or resulted in the deprivation of constitutional rights." *See Lorraine v. United States*, 444 F.2d 1, 2 (10th Cir. 1971) (per curiam) (noting that bare conclusory statements without factual allegations are insufficient to establish counsel's ineffectiveness). The Court must give considerable deference to an attorney's strategic decisions and "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690; *United States v. Barrera-Muñoz*, 2013 WL 12142581, at *3 (D.N.M. July 3, 2013*), report and recommendation adopted,* 2013 WL 12140980 (D.N.M. Oct. 8, 2013).

Petitioner fails to specify how counsel's actions, or lack of them, were deficient or resulted in prejudice to his case. As with any pro se litigant, the Court may not assume the role of advocate for Petitioner. *Cf. Hall*, 935 F.2d at 1110 (while pleadings submitted by a pro se litigant will be held to less stringent standard, it is not the proper function of courts to assume the

role of advocate for a pro se litigant). Simply pointing to possible motions such as "double jeopardy", "suppress", or "jury instructions" gives the Court no understanding of why such motions should have been filed, let alone whether there was a reasonable probability that they would have been granted. It is presumed here that Petitioner's double jeopardy motion would be based on *State v. Nunez*, that his suppression motions would be based on alleged defects in the affidavits, and that a jury instruction challenge would be based on holdings set forth in the *Catt* opinion. But, as the Court explains elsewhere in this PFRD, these motions would be without merit. Furthermore, even if these unfiled motions could be seen as potentially meritorious, Petitioner can't demonstrate that trial counsel simply chose to not file them, based upon a defense strategy or for some other reason. *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000). Nor does Petitioner suggest how counsels' failure to communicate worked to his detriment. The failure by Petitioner to add even an outline of flesh to his skin-and-bones claims is fatal to his petition.

In its review, this Court must afford the underlying state decisions great deference. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (discussing "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt")); 28 U.S.C. § 2254(d). The state court denied Petitioner relief, both on direct appeal and in state habeas proceedings, and there is nothing about those decisions to suggest that they applied federal law in an objectively unreasonable manner. *Cf. Williams v. Taylor*, 529 U.S. 362, 409 (2000) (court must ask 'whether the state court's application of clearly established federal law was objectively unreasonable."). As such, I recommend that the District Judge deny Petitioner's ineffective assistance claims.

**GROUND FIVE:      Whether The Warrants For Petitioner's Arrest And The Search Of His Brother's Residence Were Unlawfully Issued**

In Ground Five, Petitioner turns to the warrants that were issued by the state judge, to argue that the affidavits were deficient because they lacked information regarding the credibility of the informant, they failed to establish a nexus between the narcotics investigation and the Petitioner or his property, they lacked details about alleged narcotics purchases, and that evidence regarding controlled purchases was not presented at trial while false testimony was otherwise offered at trial. Doc. 7 at 36-37. Petitioner points to alleged falsehoods or disputed provisions within the affidavit for arrest warrant, as well as for the affidavit for search warrant. *Id*. at 38-42. Petitioner concludes by stating:

> 10. There's nothing here showing, how, when, or where, they got their information from. There are no police reports with locations dates times. There's no nexus between the information and the Petitioner. There's no veracity no basis of knowledge or reliable source of information just accusatory statements by agents policing for profit.

> 11. None of the warrant requirements mandated by New Mexico law were followed by (OCNEU agents).

*Id.* at 42. Petitioner then attaches the affidavits and reports of investigation. *Id.* at 43-57.

The record reveals that Petitioner submitted in the trial court a hand-written motion to suppress, Doc. 7 at 54-58, as well as a "Motion to Object". *Id.* at 59-63. These motions were filed on the eve of trial and the docket sheets reflect that the motions were heard by the trial judge on March 4, 2014; because trial proceeded shortly thereafter, one infers the trial judge denied them. *See* Doc. 19-1 at 624. The New Mexico Court of Appeals addressed Petitioner's pro se motion to suppress and concluded that substantial evidence demonstrated that officers "had a reasonable belief based on specific and articulable facts that a protective sweep of Robert Chavez's residence was necessary for purposes of officer safety and preservation of evidence."

22

*Id.* at 256-57.  The appellate court affirmed the district court's denial of Petitioner's pro se

motion to suppress.  *Id.* at 258.  The state district judge subsequently denied Petitioner's

ineffective assistance claims, one of which dealt with the suppression of evidence.  *Id*. at 430.

On federal habeas review, this Court will only grant an application by a person in state

custody with respect to a claim that was adjudicated on the merits, if that adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Thus, the initial question before the Court is whether the state courts'

decisions were "contrary to" federal law then clearly established.  *Harrison*, 562 U.S. at 100.

This Court is unable to conclude that the Court of Appeals' denial of Petitioner's appeal on the

suppression issue was contrary to established federal law.  The appellate court noted controlling

Supreme Court precedent on a protective sweeps, which established that "[t]he Fourth

Amendment permits a properly limited protective sweep in conjunction with an in-home arrest

when the searching officer possesses a reasonable belief based on specific and articulable facts

that the area to be swept harbors an individual posing a danger to those on the arrest scene."

Doc. 19-1 at 256 (Memorandum Opinion, citing *Maryland v. Buie*, 494 U.S. 325, 337 (1990)).

The court of appeals then conducted a detailed review of the facts in evidence that established

the justification for the protective law enforcement sweep and how officers acted within *Buie's*

limits.  Doc. 19-1 at 256-58.  This Court is unable to conclude that the New Mexico Court of

Appeal's adjudication was contrary to federal law or was based on an unreasonable

determination of the facts.  Accordingly, I recommend that the District Judge deny Petitioner

relief on Ground Five.

<b><u>THE COURT RECOMMENDS AGAINST ISSUING<br>A CERTIFICATE OF APPEALABILITY</u></b>

Under Rule 11 of the Rules Governing Section 2254 Cases, the Court must issue or deny

a Certificate of Appealability (COA) whenever it enters a final order adverse to the § 2254

petitioner.  *See* Habeas Corpus Rule 11(a).  A COA may issue only upon "a substantial showing

of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*,

529 U.S. 473, 484 (2000) (stating that to obtain a COA, a petitioner must "demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims debatable

or wrong").  The Court concludes that Petitioner has not made such a showing and therefore

recommends against the issuance of a COA.

<b><u>CONCLUSION AND RECOMMENDATION</u></b>

A review of the record in this case does not show that the adjudication of Petitioner's

case resulted in a "decision that was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States;" or

resulted in a decision that was based on an "unreasonable determination of the facts in light of

the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  In denying relief,

both the New Mexico Court of Appeals in direct review and the State district judge sitting in

habeas reasonably applied clearly established federal law, and reasonably determined the facts of

the case given the evidence presented.  Accordingly, the Court concludes that, under the

deferential standard set forth in the AEDPA, the petition for a writ of habeas corpus should be

denied.

For all of the foregoing reasons, the Court finds that Petitioner Joe David Chavez Jr.'s

*Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus By a Person In State Custody* is not

well-taken and recommends that it be **DENIED** and **DISMISSED WITH PREJUDICE.**  The

Court further recommends that a certificate of appealability (COA) be **DENIED**.


_____
JOHN F. ROBBENHAAR
U.S. Magistrate Judge


---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of
these Proposed Findings and Recommended Disposition they may file written objections with
the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any
objections with the Clerk of the District Court within the fourteen-day period if that party
wants to have appellate review of the proposed findings and recommended disposition.  If
no objections are filed, no appellate review will be allowed.**